Beverly S. WILSON,
Petitioner–Appellant,

v.

Herbert A. WILSON,
Respondent–Appellee.

No. 2–1279A380.

Court of Appeals of Indiana,
First District.

Sept. 16, 1980.

Rehearing Denied Oct. 16, 1980.

Bruce M. Pennamped, Forbes, Mercer & Pennamped, Indianapolis, for petitioner–appellant.

James A. Buck and John P. Tobin, Jr., Buck, Berry, Landau, Breuning & Quinn, Indianapolis, for respondent appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Petitioner appellant Beverly S. Wilson appeals from the judgment of the Marion Circuit Court dissolving her marriage with respondent appellee Herbert A. Wilson, dividing their property, and fixing custody, support, and visitation rights regarding their children.

We reverse and remand.

## STATEMENT OF THE FACTS

Beverly and Herbert were married on August 25, 1955. Six children were born of

the marriage. The parties were separated on July 12, 1978. On June 19, 1979, the Marion Circuit Court granted the dissolution of marriage, and on July 10, 1979, the court entered judgment dividing the property of the parties.

Beverly was awarded a condominium in Florida known as Innisbrook, subject to a mortgage on which she was to hold Herbert harmless. She was also awarded her bank accounts and cash, an automobile, and a judgment in the amount of $60,500, payable in monthly installments of $500 over 121 months. The parties had agreed privately to a division of furnishings, crystal, and china. All of the other property owned by the parties was awarded to Herbert. Herbert was ordered to pay for the college education and health care of the five unemancipated children.

## ISSUES

1. Whether the trial court failed to divide the parties' property in accordance with Ind. Code 31–1–11.5–11 (1976) in that substantially all of the income producing property, inherited by Herbert was awarded to him without offset to Beverly and the cash judgment awarded to Beverly was unsecured.

2. Whether the trial court erred in failing to set forth in the judgment the manner in which it considered pension benefits due Herbert and in awarding the value of those pension benefits.

## DECISION

*Issue One*

Beverly complains that the trial court in its findings and conclusions excluded from its computation of the value of marital assets those assets or portions of assets traceable to gifts or inheritance from Herbert's parents. These assets or portions of assets include capital stock, interests in real estate, and the cash surrender value of life insurance policies.

Herbert and Beverly filed a joint motion for findings of fact and conclusions of law. In Finding No. 28, the trial court stated:

"28. The net/net [*sic*] values of the maritally owned property are as follows:

(a) Innisbrook, $82,465

(b) Overlook, $34,447

(c) Elkhart Store, $45,597

(d) Cash (at time of trial) $3,500 Wife, $500 Husband.

(e) Life Insurance, $4,000

(f) Lilly Investment, $37,285

TOTAL: $207,794."

In Finding Nos. 15, 16, 17, and 20 the court indicated that it was subtracting from the fair market values of Innisbrook and Overlook (two condominiums), the store in Elkhart (on which there was a contract to sell), and the life insurance policies, the amounts attributable to gifts or inheritance from Herbert's parents. In its Conclusion of Law No. 2,[1] the trial court said:

"2. Respondent has inherited a great deal of property, the nature of which has not changed and which remains in tact [*sic*], namely, Illinois & 20th, 921 Realty, his stock in Fred A. Beck Company and his stocks in his portfolio, all of which inherited property should be set over to him, although the court considered it and considered the income therefrom in the above Findings of Fact."

Indiana Code 35–1–11.5–11 (1976)[2] provided at all times relevant to this case as follows:

"31–1–11.5–11 Disposition of property

"Sec. 11. Disposition of Property. In an action pursuant to section 3(a), *the*

---

1. As Judge Garrard pointed out in *In re Marriage of Miles*, (1977) Ind.App., 362 N.E.2d 171, conclusions of law are not required by Ind. Rules of Procedure, Trial Rule 52(A). The court is required under that rule, however, to "state its conclusions" on the facts it has found. In the case at bar we will treat the trial court's Conclusions of Law as conclusions on the facts wherever possible.

2. For the current version of this provision see Ind. Code 31–1–11.5–11 (Supp.1980).

court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one (1) of the spouses and requiring either to pay such sum as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale.

"In determining what is just and reasonable *the court shall consider* the following factors:

"(a) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

"(b) *the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift*;

"(c) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

"(d) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

"(e) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties." (Our emphasis.)

Beverly maintains that IC 31–1–11.5–11 requires that "property acquired by each spouse prior to separation *through inheritance or gift* be *divided* by the trial court in a 'just and reasonable manner.'" (Original emphasis.) She contends that what the court did here was to exclude the value of the inheritance and gifts *before* it calculat-

ed the value of the "marital pot" which was to be divided between the parties. Beverly further asserts that the court did not consider the assistance she rendered Herbert in using and developing the inherited assets. She believes that the trial court consequently abused its discretion in dividing the marital assets in such a way that Herbert received over 80% of those assets.

Herbert argues the trial court expressly stated in Conclusion No. 2 that it considered the inherited property and the income therefrom in its findings and in Conclusion No. 1 that it considered IC 31–1–11.5–11 in dividing the marital property. He asserts that a "just and reasonable" division of the marital property required by the statute need not necessarily be an equal division and that the statute, in referring to gifts and inheritance, does not demand that they be divided between the parties.

As Judge Staton said in *In re Marriage of Hirsch*, (1979) Ind.App., 385 N.E.2d 193, 196:

"When considering the propriety of a property division, this Court does not weigh the evidence, but examines the division only for an abuse of discretion. *Wilcox v. Wilcox* (1977), Ind.App., 365 N.E.2d 792; *In re Marriage of Lewis* (1977), Ind.App., 360 N.E.2d 855; *Geberin v. Geberin* (1977), Ind.App., 360 N.E.2d 41. The court has broad discretionary power in determining the disposition of property. *Eppley v. Eppley* (1976), Ind. App., 341 N.E.2d 212. IC 1971, 31–1–11.- 5–11 merely requires the court to divide the property 'in a just and reasonable manner.' The court is not required to divide the property equally between the parties. *In re Marriage of Dougherty* (1978), Ind.App., 371 N.E.2d 1328; *Trimble v. Trimble* (1976), Ind.App., 339 N.E.2d 614."

Beverly cites *In re Marriage of Dreflak*, (1979) Ind.App., 393 N.E.2d 773, *rehearing denied*, 402 N.E.2d 1284 (1980), in support of her position. In *Dreflak* the trial court had found that the husband's one–third in-

terest in a liquor store was not marital property for the purposes of division under IC 31–1–11.5–11(b) because he had inherited that interest. Chief Judge Buchanan, writing for this court, said: "The 'one pot' theory preserved by Ind. Code 31–1–11.5–11(b) specifically prohibits the exclusion of any assets from the scope of the trial court's power to divide and award. Therefore, the trial court erroneously characterized the inheritance as 'not marital property subject to disposition.'" 393 N.E.2d at 776.

Nevertheless, the Court of Appeals affirmed the judgment with the following explanation:

"However, the property division made by the trial court can be sustained as just and reasonable because it has a rational basis to support it. Considering the nature of this inheritance, that he had helped operate the family–run business, that it was received within a year before the parties separated, the fact that under both parties' calculations William received less of the other assets, and that the inherited interest would have comprised thirty–three percent to forty percent of the parties' net assets had it been totally included in the disposition, we cannot say that the result reached is clearly against the logic and effect of the facts and circumstances before the trial court."

*Id.*

In his opinion denying rehearing in *Dreflak,* Chief Judge Buchanan noted the trial court had stated in the judgment that it "'considered the Husband's liquor store interest.'" 402 N.E.2d at 1284. This statement, in connection with the statement that the liquor store was "'not marital property subject to disposition'" was held to create an ambiguity. However, the Court of Appeals determined that under the circumstances it was reasonable to presume that the trial court had not erred. The husband had been awarded considerably less of the other assets, giving rise to the inference that the trial court had actually considered the inheritance.

Beverly asserts that the factual situation in *Dreflak* accounts for the affirmance and distinguishes that case from hers with regard to the appropriate result. Herbert also believes *Dreflak* is distinguishable from this case for the reason that the trial court there expressly found that the inherited property was "not marital property subject to disposition under § 31–1–11.5–11(b) . . . ." *Id.* Here, he says, the trial court specifically stated all of the property and all of the requirements of IC 31–1–11.5–11 were considered in dividing the property.

Beverly also relies upon *In re Marriage of Osborne,* (1977) Ind.App., 369 N.E.2d 653, *transfer denied,* for the principle that mechanical formulas may not be applied under IC 31–1–11.5–11. In *Osborne* the parties had been married for 19 years and both had been employed throughout the marriage. Four months prior to their final separation, the husband's mother died intestate. As a result, the husband obtained, by right of survivorship, sole ownership of two certificates of deposit, totalling $12,000. These had been issued jointly to him and his mother but had been acquired solely with his mother's funds. Furthermore, there was testimony that his interest in his mother's estate, which was still under probate, would be between $27,000 and $28,000, aside from the certificates of deposit. In dividing the marital property, the trial court awarded about $36,700 in assets to the wife. The husband was awarded $3,770 in assets plus the assets he received or would receive as a result of his mother's death, for a total of about $42,770.

The Court of Appeals rejected the husband's contention that his undistributed inheritance was not "acquired" prior to the parties final separation for the purposes of IC 31–1–11.5–11. The court then examined the evidence favorable to the judgment in light of the factors listed in IC 31–1–11.5–11 and found no extenuating circumstances which would justify the division. Consequently, the Court of Appeals reversed the

trial court for the reason that "under such circumstances, awarding substantially all the marital assets to the wife while reserving the inheritance to the husband was against the clear logic and effect of the circumstances within the mandate that the division should be fair and equitable to each." 369 N.E.2d at 657.

Herbert cites *Osborne, supra*, for the proposition that "the enumerated factors [in IC 31–1–11.5–11] provide a basis upon which the trial court may determine that just and reasonable does not necessarily mean equal or relatively equal." (Our insertion.) *Id.* at 656. He agrees that under *Osborne* the trial court may not apply a mechanical formula in dividing the marital assets, but he denies that the trial court did so in the case at bar.

As Herbert argues, the trial court here stated in Conclusion No. 1 that it had considered IC 31–1–11.5–11 as it divided the marital property and in Conclusion No. 2 that it had considered the inherited property and the income therefrom in awarding it to Herbert. However, it is apparent from the trial court's findings that its "consideration" of the gifts and inheritance was limited to calculating their values and setting them aside for Herbert. The inherited items mentioned in Conclusion No. 2 were not listed at all as maritally owned property in Finding No. 28. The court systematically excised any portion of the marital assets which was attributable to a gift or an inheritance from Herbert's parents.

■■ *In re Marriage of Dreflak, supra*, makes it clear that inherited property is not to be excluded from the marital assets. It is true that here, unlike *Dreflak*, the trial court did not expressly say that it was excluding inherited or gift property. Nevertheless, the spirit of IC 31–1–11.5–11 and of *Dreflak* clearly requires that inherited and gift property be *treated* as a marital asset. Further, as *In re Marriage of Osborne, supra*, implies, simplistic or mechanical divisions of the marital assets do not satisfy IC 31–1–11.5–11.

In the case of *In re Marriage of Miles*, (1977) Ind.App., 362 N.E.2d 171, 174, Judge Garrard explained our scope of review of special findings of fact under Ind.Rules of Procedure, Trial Rule 52(A), on matters within the trial court's discretion as follows:

"[W]here, as here, the outcome is not mandated by an established rule of law but, instead, the decision rests within the discretion of the court, *we must reverse* if the decision is not consistent with the findings and conclusions or *if the reasons given are insufficient as a matter of law to justify the manner in which the court exercised its discretion.* The reason arises from the fact that the court does have discretion. If the reason given by the court is not a valid basis for a particular exercise of discretion, it can be no more than conjecture on our part once the court recognizes the invalidity of its original reason it will reach precisely the same exercise of discretion for other reasons. Our Supreme Court recently so held in *City of Elkhart v. Middleton* (1976), Ind., 356 N.E.2d 207. Similarly, if the findings and conclusions entered by the court, when construed most favorably toward the judgment, are nevertheless clearly inconsistent with it, the decision must be set aside regardless of whether there was evidence adduced at trial which would have been sufficient to sustain the decision. To hold otherwise would negate the primary purpose of special findings." (Our emphasis.)

*Accord, Dahlin v. Dahlin*, (1979) Ind.App., 397 N.E.2d 606.

■ It has been said that this court will presume that the trial court complied with IC 31–1–11.5–11. *Libunao v. Libunao*, (1979) Ind.App., 388 N.E.2d 574, *rehearing denied*, 390 N.E.2d 695; *In re Marriage of Patus*, (1978) Ind.App., 372 N.E.2d 493, *transfer dismissed.* However, this presumption is rebutted where, as here, it is apparent from the findings and conclusions that the trial court did not properly apply the statute.

■ We hold that the property of the parties was not divided in a just and reasonable manner and that the manner of division constitutes an abuse of the trial court's discretion. Accordingly, this cause must be remanded to the trial court for a redetermination of the property division in compliance with this opinion. We shall not otherwise attempt to dictate to the trial court how it should exercise its discretion in dividing the property.

Beverly has, however, identified a few other problems which merit discussion in order to prevent their recurrence on remand of this cause.

Conclusion No. 2 lists Herbert's interest in the 921 Realty Company as inherited property. Herbert, himself, testified on cross-examination that this entity was not in existence at his mother's death.

Finding No. 19 states that Herbert's interest in the Illinois and 20th Company which he inherited from his mother had a stipulated value of $46,416. The parties' stipulations of fact make no mention of this, however. Rather, the value of this interest was the subject of expert testimony at trial. Herbert's expert witness testified that Herbert's interest in the entity was valued at $46,416.

■ Beverly argues that awarding substantially all of the income producing property to Herbert while awarding her an unsecured judgment of $60,500 payable over a period of 121 months constitutes an abuse of discretion. Indiana Code 31–1–11.-5–15 (1976)[3] provided at the time pertinent to this case as follows:

"31–1–11.5–15 Security for payment

"Sec. 15. Security for Payment. Upon entering an order pursuant to section 11 or 12, the court *may* provide for such security, bond or other guarantee that shall be satisfactory to the court to secure the obligation to make child support payments or to secure the division of property." (Our emphasis.)

This court faced a similar contention in the case of *In re Marriage of Davis*, (1979) Ind.App., 395 N.E.2d 1254, 1259, where Judge Lowdermilk said:

"The statutory language obviously affords the court the broadest possible discretion in requiring security for the payment of support and the division of marital property. As we have made clear throughout this opinion, we will not substitute our judgment for that of the trial court. *Neither will we impose a greater obligation upon the trial court to require security than the legislature has imposed.* We are troubled by the fact that Bonnie was dispossessed of her holdings–a little less than one–half of the total stock outstanding–in exchange for certain valuable property and $100,000.00 payable over 130 months. We question the wisdom of giving an unsecured, personal debt in exchange for such assets, but, in light of the statutory provisions and the evidence before the trial court, we are unable to deem it an abuse of discretion." (Footnote omitted; our emphasis.)

We, likewise, are unable to call the trial court's failure to provide security here an abuse of discretion.

■ The trial court apparently considered the value of that judgment of $500 per month for 121 months to be the total of all the payments, or $60,500. As Beverly points out, however, *Burkhart v. Burkhart*, (1976) 169 Ind.App. 588, 349 N.E.2d 707, established that a trial court should, in determining the value of such an annuity, discount the payments to their present value, which would be less than the sum of all the payments.

*Issue Two*

With regard to Herbert's pension plans, the trial court in Finding Nos. 29 and 30 said:

"29. Respondent has a Pension Plan at the Fred A. Beck Company to which he

**3.** For the current version of this provision, see Ind. Code 31–1–11.5–15 (Supp.1980).

has not contributed and if he left the employ of the said company at this time, he could take no part of it with him.

"30. Respondent has a Pension Plan at Eli Lilly & Company, which, if he died would pay him nothing, at this time; it would pay him $1628 if he retired at age sixty–five, $1410 if he retired at age sixty–two, $939 if he retired at age fifty–six and $572 if he retired at age fifty–one. His contribution to the said Pension is vested, but the pension as a whole is not."

In Finding No. 33, the trial court said, *inter alia*, that Herbert "should have as his separate property all of his pension benefits. . . . ." Further, in Conclusion No. 4 the court stated:

"4. In regard to the Pensions of Respondent at the Fred A. Beck Company and Eli Lilly Company, the court must consider and has considered those pensions and the amount of dollars they represent in the future, as well as the dollars they represent now, in the Findings of Fact and the Distributions set out above."

Beverly asserts that the trial court did not properly consider the pension benefits in dividing the marital assets and in making its award. She states that the court should have recognized in its findings the present value of Herbert's pension benefits, as established by the uncontradicted testimony of her expert witness. She challenges as unsupported the court's statement in Finding No. 30 that Herbert's "contribution to the said Pension is vested, but the pension as a whole is not." Rather, she says, his pension is vested at present and would be available to him if he terminates his employment, but receipt of payment of the benefits is deferred until he reaches age 65 or accumulates 80 points under an age plus years of service formula.[4] She says that Indiana cases on the subject have the following principle as a common thread:

"[T]he Court must consider and set forth [in] its finding the present value of a vested pension interest. Once so considered and set forth the Court has no power to award the future payments due under the plan, but must instead content itself to award to one party a portion of the value thereof which it considers to be 'just and reasonable' guided in that decision by the Statute. The award itself must be from marital assets subject to division." (Our insertion.)

Herbert relies upon *Hiscox v. Hiscox*, (1979) Ind.App., 385 N.E.2d 1166, *transfer denied*, to support his position that he does not have a "vested" right to a pension and that no portion of a pension may be awarded to the other party in a property division. He further contends that nothing in the Trial Rules requires the court to assign a dollar value to pensions.

In *Hiscox, supra*, the husband was receiving monthly military retirement payments which were contingent upon his survival and upon the amount of income he received from other sources. The wife contended that this benefit constituted the only major asset of the marriage and that, consequently, the court erred in awarding it entirely to the husband. Judge Garrard, writing for this court, laid out the applicable rule as follows: "[W]hile it is required for the trial court to consider a spouse's pension plan as a factor in dividing existing marital property, an actual award under the property settlement must consist of assets in which the parties have a vested present interest." (Footnote omitted.) 385 N.E.2d at 1167. This court then affirmed the judgment after determining that the military retirement pay was not a vested present interest.

In *Savage v. Savage*, (1978) Ind.App., 374 N.E.2d 536, *transfer denied*, the husband was receiving a monthly pension of $350 and a temporary monthly bonus of $600 for taking early retirement. The trial court awarded the wife $350 per month from the pension and bonus until the bonus expired and one–third of the pension payments from that time forward. Judge Lybrook,

---

4. Beverly is apparently arguing here about the Lilly pension.

writing for this court, explained why the judgment had to be reversed:

"James does not have a sufficient vested present interest in his future monthly pension payments so as to qualify those payments as 'property' under the relevant statute. At the time of the decree of dissolution, James had only a contingent future interest rather than a vested present interest in the payments. *He was not entitled to receive payment of his pension on demand, but rather was required to wait for monthly payments which were contingent upon his continued survival.* While we realize that there are material differences between a salary that may be earned at some future time and the right to receive payments under a vested pension plan, it seems only too apparent that payments to be made from income to be received in the future constitutes an award of property in excess of the value of the marital assets and therefore constitutes an award of maintenance or support rather than a division of property. Because the trial court made no finding that Jean was incapacitated as required under IC 1971, 31–1–11.5–9(c), it was error for the court to order payments from James' pension plan payments.

. . . . .

"The trial court erred by apportioning James' future pension payments in the property settlement. While the rights of either spouse to payments under a pension plan must be considered by the trial court in determining the manner in which marital assets are to be distributed, an actual award under the property settlement must consist of assets in which the parties have a vested present interest which is sufficient to qualify the asset as marital property. If the trial court desires to award periodic payments to one spouse as support, then it must make the requisite finding under IC 1971, 31–1–11.-5–9(c) and designate the payments as such." (Our emphasis.)

374 N.E.2d at 538–40.

Furthermore, in *Goodwill v. Goodwill,* (1978) Ind.App., 382 N.E.2d 720, the hus-

band was awarded real estate valued at $21,150 and a 1966 Pontiac of unestablished value. He was responsible for $21,352.50 in debts. The wife was awarded $1,500 worth of furniture and a $6,000 judgment which was made a lien upon the husband's Railroad Retirement Pension. The net value of the marital assets, excluding the pension, was the value of the Pontiac less the $602 excess of debts over the other assets.

The husband argued on appeal that the judgment in favor of the wife was an abuse of discretion in that it exceeded the value of the marital assets. Judge Sullivan observed that the money judgment there was intended to be a property division rather than maintenance. He further noted that the husband was 55 years old and that there was no evidence that the pension would provide any benefits if he retired or died before reaching age 60. The Court of Appeals reversed the trial court. After quoting extensively from *Savage, supra,* Judge Sullivan said:

"In the case before us, the Wife's claim is even less compelling than that presented in *Savage, supra.* Here the Husband has yet to reach the age upon which any retirement benefits accrue. The pension plan is neither a present nor a vested interest as is required for disposition under the Indiana Dissolution of Marriage Act. *See Wilcox v. Wilcox* (1st Dist.1977) Ind.App., 365 N.E.2d 792; *Johnson v. Johnson, supra,* [Ind.App.,] 367 N.E.2d 1147. The $6,000.00 judgment therefore constituted an abuse of discretion in that it exceeded the value of the marital property available for distribution." (Footnote omitted.)

382 N.E.2d at 723.

Although the issue in *Goodwill, supra,* was different from the one before us, both cases involve a pension under which the husband is not at the time of the trial entitled to receive benefits.

Beverly argues in reply that Herbert's pensions are vested, although the payments are deferred. She asserts that vesting

should not depend upon Herbert's survival or continued employment and that if we accept Herbert's interpretation of *Hiscox, supra,* that case should be overruled.

██ We decline Beverly's invitation to depart from the reasoning of *Hiscox* and *Savage, supra.* Those cases say that the existence of a pension is one of the factors a trial court must consider in dividing the marital property pursuant to IC 31–1–11.5–11.[5] However, where the pension is not present or vested in that the retiree must survive in order to receive the next periodic payment and is not entitled to receive payment on demand, the pension is not marital property which can be divided or awarded to the other spouse under IC 31–1–11.5–11.

Here the evidence indicates that even if Herbert retired immediately, he would be entitled to receive the Lilly pension benefits as soon as his age plus his years of service equal 80 or he reaches age 65. However, as of December 31, 1977, he had accumulated only about 70 points and he was only 45 years old. The evidence also suggested that if Herbert died before accumulating 80 points, he would be entitled to no pension benefits, although there is a survivor monthly income benefit. The Beck pension plan would provide Herbert with an annual retirement benefit at normal retirement age; this annuity is apparently guaranteed for 10 years and would continue for the rest of Herbert's life if he lives more than 10 years after retirement. We have not been directed to any evidence tending to show that Herbert does not have to live to normal retirement age to receive any benefits from the Beck pension.

██ We conclude that the trial court did not err in finding that Herbert would not be entitled to any part of the Beck pension if he left the company at the time of the judgment and that his Lilly pension is not vested. Both of those pension inter-

ests are contingent upon Herbert's surviving to some future date. The testimony of Beverly's expert witness, an actuary, that Herbert's interest in the Lilly pension is vested was not binding on the trial court; that was a question for the court, as the trier of fact, to determine. Herbert's pension benefits are not marital property subject to division under IC 31–1–11.5–11.

██ Furthermore, we do not find reversible error in the trial court's failure to specifically state the present values it found for those pensions. Beverly was not entitled as a matter of law to a specific amount of compensation in her award to balance against Herbert's contingent pension interests, although the trial court was bound to take those interests into consideration in dividing the marital property. Accordingly, the finding of a specific present value by the trial court is not necessary for our review of the court's exercise of its discretion.

██ Moreover, no abuse of discretion has been demonstrated in the manner in which the trial court considered the contingent pension benefits in dividing the property.

Because the trial court abused its discretion in its treatment of gift and inheritance property, we reverse the judgment and remand the cause for proceedings consistent with this opinion.

ROBERTSON, P. J., and NEAL, J., concur.

---

5. Judge Lybrook suggested in *Savage, supra,* that this factor would be relevant to "the . . . earning ability of the parties" under IC 31–1– 11.5–11(e) (now IC 31–1–11.5–11(b)(5)). *Accord, Libunao v. Libunao, supra.*