Robert NEFFLE, Appellant
(Respondent Below),

v.

Anna NEFFLE, Appellee
(Petitioner Below).

No. 2–684–A–158.

Court of Appeals of Indiana,
Second District.

Oct. 8, 1985.

Rehearing Denied Nov. 7, 1985.

⊗⇒252.3(4)

John J. Hudgins, Indianapolis, for appellant.

Evelyn Pitschke and Frank E. Spencer, Indianapolis, for appellee.

SULLIVAN, Judge.

Respondent-Appellant, Robert Neffle (Husband), appeals from a marriage dissolution decree. Husband contends the trial court erred with respect to the distribution of the marital assets:

(1) Awarding the Wife a money judgment rather than dividing the marital property in kind;

(2) Including in the marital estate the present value of his pension; and

(3) Incorrectly valuing various real estate interests.

Husband, age 56, and the Wife, age 69, had been married twelve years. The marriage produced no children. Each spouse had brought property, including their former residences, into the marriage and the bulk of the marital assets consisted of rental properties, most of which were purchased and maintained after the marriage by the Husband.

## I.

### MONEY AWARD

Husband contends that the trial court erred in dividing the marital estate by setting over eight of nine rental properties to him and granting the Wife a money award. Specifically, Husband claims that the eight rental properties he acquired, although valued at $108,300, operated at a loss in 1981 and 1982 and will not provide him sufficient rental revenue to pay the money award. Husband submitted an affidavit with his motion to correct errors claiming that the rental properties also operated at a loss in 1983 and that he has "been trying to sell the properties but has not received an offer sufficient to cover the value set by the court." Record at 22. Thus Husband claims that he is left with only his employment income, which is insufficient to pay the $44,000 award.

It is well-settled that the trial court has broad discretionary powers in effecting a just and equitable distribution of marital property. *Hoyle v. Hoyle* (1985) 3d Dist. Ind.App., 473 N.E.2d 653.

I.C. 31–1–11.5–11(b) provides:

"[T]he court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, *or by setting the same or parts thereof over to one [1] of the spouses and requiring either to pay such sum, either in gross or in installments, as may be just and proper,* or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale." (Burns Code Ed.Supp.1984). (Emphasis supplied).

■■■ This statute allows the trial court to divide the marital property by awarding one of the spouses the bulk of the physical assets and the other spouse a money award which represents a portion of those physical assets. *In Re Marriage of Davis* (1979) 1st Dist., 182 Ind.App. 342, 395 N.E.2d 1254. This is true even where the party receiving the non-cash property must liquidate a portion of that property in order to pay the monthly installments of the cash award to the former spouse. *Burkhart v. Burkhart* (1976) 1st Dist., 169 Ind.App. 588, 349 N.E.2d 707. Husband's protestations of inequity are particularly unavailing since at trial he testified that he was unwilling to have set over to the Wife any of the properties other than the one which she received on Spann Avenue. Moreover, Husband's contentions that he cannot raise sufficient funds to meet the monetary award ring hollow when the total real property awarded to him is valued at approximately $160,000 [1] and is apparently unen-

cumbered. The trial court's distribution of these assets did not constitute an abuse of discretion.

## II.

### PENSION PLAN

Husband contests the inclusion in the marital estate of the present cash value of his RCA Retirement Plan of $5,900. Wife contends that the $5,900 is marital property because the Husband had a vested interest in the retirement plan even though he could not withdraw that sum unless and until his employment with RCA was terminated.

The evidence disclosed that Husband had contributed $4,070 to the retirement plan and that his contributions had earned interest of $1,830 for a total of $5,900. Under the terms of the plan Husband could not withdraw or borrow any of his accrued contributions or interest, although he would be entitled to the whole of his contributions plus interest upon termination of employment. If Husband continued his employment and contributions until retirement at age 65, then the pension plan would pay him projected benefits of $320 per month until his death.

■■ In a dissolution proceeding the court is to include in the marital estate the property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in his or her right after the marriage and prior to final separation of the parties, or acquired by their joint efforts. I.C. 31–1–11.5–11. "Property" is defined as "all the assets of either party or both parties, including a present right to withdraw pension or retirement benefits." I.C. 31–1–11.5–2(d) (Burns Code Ed.1980).

■■ Husband correctly argues that a trial court may not include in the marital estate an interest in a spouse's future income, whether the source of that income constitutes salary, pension or retirement benefits.

---

**1.** In addition to the eight rental properties received, Husband also received a residence val-

ued at $50,000.

This is true whether the attempt is to award an actuarially computed present value of future payments of benefits being drawn at the time (*Koenes v. Koenes* (1985) 1st Dist.Ind.App., 478 N.E.2d 1241; *Sadler v. Sadler* (1981) 4th Dist.Ind.App., 428 N.E.2d 1305), actuarially computed present value of contemplated future salary (*Wilcox v. Wilcox* (1977) 1st Dist., 173 Ind.App. 661, 365 N.E.2d 792), or a fixed percentage of future payments from a pension or bonus plan presently being drawn (*Savage v. Savage* (1978) 1st Dist., 176 Ind.App. 89, 374 N.E.2d 536.

The rationale for such exclusion from the marital estate is that an award of this nature constitutes "alimony" or maintenance without a requisite determination of physical or mental incapacity.[2]

■ Quite clearly, Husband here did not have a present vested right in any benefits of his pension plan. He had not yet retired or terminated his employment. The trial court, however, did not attempt to include any projected pension benefits in the award; nor did it even attempt to include a discounted present value of those future benefits. Rather, it included the amount of contributions Husband had made into the plan and the interest earned thereon. This amount is a marital asset subject to distribution. *Stigall v. Stigall* (1972) 1st Dist., 151 Ind.App. 26, 277 N.E.2d 802, 811; *See* H. Garfield, *Survey-Domestic Relations*, 14 Ind.L.Rev. 315, 347 (1981); *In Re Marriage of McDonald* (1981) 3d Dist.Ind.App., 415 N.E.2d 75 (cash value of life insurance policy a marital asset); *Cf. Metropolitan Life Ins. Co. v. Tallent* (1983) Ind., 445 N.E.2d 990 (life insurance policy with no cash value not a marital asset). Husband

did have a vested right in this amount, in that his right to it was absolute, even though his enjoyment of these monies was to be postponed to a future time. Though Husband would have to terminate employment in order to receive the $5,900, this "cost" of liquidating the asset does not change the character of the asset as marital property any more than the financial cost of prematurely "cashing-in" or surrendering insurance policies or other investments.[3]

## III.

## VALUATION OF PROPERTY

■ The Husband contests the valuation placed upon certain properties awarded him. Wife argues that there was sufficient evidence to support the trial court's valuation. The burden of producing evidence as to the value of marital assets is upon the parties to the dissolution proceeding. *In Re Marriage of Church* (1981) 2d Dist.Ind.App., 424 N.E.2d 1078. The trial court has broad discretion in ascertaining the value of property in a dissolution action. *Loeb v. Loeb* (1973) 261 Ind. 193, 301 N.E.2d 349, 358. Its valuation will not be disturbed absent an abuse of that discretion. *Whaley v. Whaley* (1982) 4th Dist. Ind.App., 436 N.E.2d 816, 821. The trial court does not abuse that discretion if there is sufficient evidence and reasonable inferences therefrom, which supports the result.

Husband complains that the court's valuations were based largely upon the testimony of the expert witness of the Wife and exceed the fair market value. Husband does not inform this court what he believes

2. I.C. 31–1–11.5–11(d) and (e) permits an award to exceed the extent of the marital assets if the recipient is mentally or physically incapacitated, if the recipient is the custodian of a mentally or physically incapacitated child, or if it is reimbursement to the recipient for contribution to the higher education of the other spouse.

3. We do note that where the pension holder must quit his or her job and thus forego present income in order to reach the pension fund or where the contingent pension benefits represent

the bulk of one spouse's future potential income, it may be unjust and unreasonable for a court to effectively require a potential pensioner to liquidate the interest in the pension or retirement plan in order to comply with the dissolution and disposition decree. This is not a concern in the present case where the $5,900 invested in the plan was set over to the Husband and only represented a small portion of the over $183,000 share of the marital assets awarded to him.

the fair market value of these properties to be, nor does he direct us to any evidence in the record rebutting the expert testimony introduced by Wife. Instead, Husband would have us reverse the trial court based upon an affidavit, attached to his motion to correct errors, of a real estate broker stating that he has listed for sale five of the properties set over to the Husband at the value set by the court plus a seven percent sales commission and a $200 closing cost on each property. The affiant states that despite diligent attempts to sell the real estate between February 7, 1984, and March 19, 1984, he has been unable to do so. Husband argues that since he has been unable to sell these properties for a net return of the value the court placed upon them, such proves that those values are higher than market rates and hence should be reduced. Husband does not tell us by how much they should be reduced.

■ We are not persuaded by Husband's "evidence" or argument. The court did not direct him to sell the properties and, with substantially all his real estate unencumbered, it does not appear that the properties must be sold to meet Husband's installment obligations under Wife's money award. Neither are we convinced simply because the properties remained unsold after the listing of them for approximately one month at the court valuations plus commission and closing costs. There was evidence from which the trial court could logically and reasonably arrive at its valuations.

Finally Husband contests the $4,941.76 valuation placed upon Wife's former residence at 525 N. Lyons Avenue awarded to her. Husband argues that the Wife's interest in this property at the date of separation was closer to his estimated $50,000 market value. Wife argues that the court's valuation was correct because she had sold the house on contract many years previously and there was only a $4,941.76 balance due on that contract.

The evidence revealed that in 1973 the Wife had executed a conditional sales contract for the property with her daughter and her son-in-law for $14,000. By 1981, approximately $8,000 of the contract had been paid. In 1981, after her daughter had been divorced, the contract was renegotiated with only her daughter listed as purchaser. The new contract balance was $6,200.

There was evidence that after her divorce the daughter had missed several payments upon the contract, but that at the time of the hearing she was current in payments. During cross-examination of the Wife, Husband attempted to ascertain exactly when the daughter fell behind in the payments and whether there was a time when the Wife could have repossessed the house. Objections to these questions were sustained. The Husband argues that this was reversible error because the answers might have shown that the Wife possessed a "chose in action," the value of which he places at the fair market value of the house at the time of the separation— his $50,000 estimate. Husband argues this value should be included as part of the marital assets.

■ A "chose in action" is a personal right not reduced into possession but recoverable by suit in law. *McNevin v. McNevin* (1983) 2d Dist.Ind.App., 447 N.E.2d 611. It is a property right characterized as personalty. *Strawser v. Strawser* (1977) 1st Dist., 173 Ind.App. 565, 364 N.E.2d 791. The term in its broadest sense encompasses all rights of action whether they sound in contract or tort. Although our Dissolution of Marriage Act provides for the disposition of all the property of the parties, choses in actions are not included as marital assets because they are not susceptible to division. *McNevin, supra,* 447 N.E.2d at 616; *Accord Loeb v. Loeb, supra,* 301 N.E.2d 349 (spouse's vested remainder subject to divestment in a trust not marital asset); *Savage v. Savage, supra,* 374 N.E.2d 536 (contingent future income and pension benefits not marital asset); *see also Metropolitan Life Insurance Co. v. Tallent, supra,* 445 N.E.2d 990 (life insurance policy with no present cash value not marital asset). The contingent and

speculative nature and value of a chose in action is what makes it incapable of division and hence excluded from marital property. This is especially so when the chose involves the rights and remedies of a seller of real estate when as here, buyers have paid over $9,000 of the $14,000 contract price and have traditionally been allowed to fall behind in payments. *See generally Skendzel v. Marshall* (1973) 261 Ind. 226, 301 N.E.2d 641, *cert. denied* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476, and *Johnson v. Rutoskey* (1984) 2d Dist.Ind.App., 472 N.E.2d 620 (foreclosure for remaining contract price rather than forfeiture appropriate remedy where purchaser's total payments under contract not minimal). The trial court did not abuse its discretion by valuing the Wife's interest in the property as the $4,941.76 balance due on the contract.

The judgment is affirmed.

MILLER, J. (participating by designation), and SHIELDS, J., concur.